# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| NANCY ALLIE, | ) | CASE NO. 5:20-cv-758 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| UNIVERSAL PROTECTION SERVICE, LLC, d/b/a Allied Universal Security Services, LLC, | ) ) ) | |
| | ) | |
| DEFENDANT. | ) | |

Plaintiff Nancy Allie ("Allie" or "plaintiff") brought this action in Summit County Court of Common Pleas on March 4, 2020, alleging that defendant Universal Protection Service, LLC d/b/a Allied Universal Security Services, LLC ("Universal LLC" or "defendant") violated the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code § 4111; the Ohio Prompt Pay Act, Ohio Rev. Code § 4113.15; Article III Section 34a of the Ohio Constitution; and the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. (Doc. No. 1-1, Complaint ["Compl."].) Universal LLC timely removed the action to this Court on the basis of federal question jurisdiction.

Now before the Court is the motion filed by Universal LLC to compel arbitration and dismiss the complaint. (Doc. No. 6 ["Mot."].) Universal LLC argues that Allie's claims are subject to an arbitration agreement. (*Id.* at 35–36.) Allie filed a brief in opposition to the motion. (Doc. No. 10 ["Opp'n"]) and Universal LLC filed a reply (Doc. No. 12 ["Reply"]). For the reasons set forth herein, the motion is granted.

## I. DISCUSSION

### A. Background

Allie was hired by United Security, LLC ("United") in March 2012 and remained in its employ until 2015. (Doc. No. 10-1, Declaration of Nancy Allie ["Allie Decl."] at ¶¶ 1–2 & Ex. A (copies of W-2s).) On August 31, 2012, Universal LLC acquired the assets of United's parent company, making Universal LLC the sole member and direct owner of United. (Doc. No. 12-1, Declaration of Matthew Lambach ["Lambach Decl."] at ¶ 5.)[1] On that same day, United registered the trade name "Universal Protection Service." (Doc. No. 10-2, State of Ohio Certificates ["Cert."] at 80.) On September 4, 2012, Universal LLC filed with the Ohio Secretary of State its "Consent for Use of Similar Name," consenting to United's use of the trade name "Universal Protection Service." (*Id*. at 83.)

On September 7, 2012, Allie signed an Arbitration Agreement ("Agreement") with "Universal Protection Service" (Lambach Decl. ¶ 5), wherein she acknowledged her "employment relationship" with that entity. A copy of the Agreement is attached to the Declaration of Jenna Burke, Universal LLC's General Manager for the Cleveland, Ohio branch. (Doc. No. 6-2 at ¶ 3 & Ex. 1.)

Effective January 1, 2016, United d/b/a Universal Protection Service merged into Universal LLC and ceased to exist as a separate corporate entity. (Cert. at 88–92.)[2] According to Universal LLC, Allie then became its employee. (Lambach Decl. at ¶ 5.) But Allie argues that she did not become a Universal LLC employee until she accepted its employment offer, which she received

---

[1] Lambach is Universal LLC's Associate Counsel. (Lambach Decl. ¶ 3.)

[2] Allie contends that United was not merged out of existence until August 2016. (Opp'n at 64.) However, the record supports Universal LLC's contention that United was merged out of existence effective January 1, 2016. (Cert. at 88.)

2

by letter dated September 12, 2016. (Allie Decl. ¶¶ 4–6 & Ex. B; Opp'n at 64–65.) According to Allie, the Arbitration Agreement that Universal LLC relies upon in its motion is no longer controlling.

### B. Law and Analysis

Because arbitration agreements are fundamentally contracts, they are reviewed according to the applicable state law of contract formation. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995). In this case, Ohio law regarding contracts controls.[3]

"The core issue in any dispute regarding the arbitrability of a matter is whether the parties agreed to arbitration." *N. Park Ret. Cmty. Ctr., Inc. v. Sovran Cos., Ltd.*, No. 96376, 2011 WL 4600700, at *1 (Ohio Ct. App. Oct. 6, 2011). Because "[a]rbitration is a creature of contract," a court must be "guided by 'the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration.'" *Id.* (citing *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960) and quoting *First Options of Chi.*, 514 U.S. at 945).

"[S]ome federal and state courts have recognized limited exceptions to the rule that a person cannot be compelled to arbitrate a dispute that he did not agree in writing to submit to arbitration." *I Sports v. IMG Worldwide, Inc.*, 813 N.E.2d 4, 7 (Ohio Ct. App. 2004) (citing *Jankovsky v. Grana–Morris*, No. 2000–CA–62, 2001 WL 1018337 (Ohio Ct. App. Sept. 7, 2001); *Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773 (2d Cir. 1995)). The Second Circuit, for example, has outlined the traditional theories for enforcing arbitration clauses as to

---

[3] Allie is an Ohio resident and Universal LLC is a Delaware corporation conducting business in Ohio. (Compl. ¶¶ 1–2.)

nonsignatories, which "arise out of common law principles of contract and agency law[,]" including: "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Thomson-CSF*, 64 F.3d at 776 (cited with approval by *I Sports*, *supra*); *see also Liedtke v. Frank*, 437 F. Supp. 2d 696, 698 (N.D. Ohio 2006) (noting that "[t]he Sixth Circuit has approved of the framework set out in *Thomson–CSF*") (citing *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003)).

Thus, "[a] nonsignatory may compel arbitration against a party to an arbitration agreement when that party has entered into a separate contractual relationship with the nonsignatory which incorporates the existing arbitration clause." *Thomson-CSF*, 64 F.3d at 777, 779 (recognizing that "circuits have been willing to estop a *signatory* from avoiding arbitration with a nonsignatory when the issues the nonsignatory is [sic] seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed[]" (emphasis in original) (citing cases)). That is the case here.

Allie argues that the Agreement is no longer controlling because it only existed between her and her then-employer, United. (Opp'n at 62.) She claims that the Agreement, importantly, contains no reference to successors or assigns. (*Id*. at 64.) She further claims that she did not sign any arbitration agreement with Universal LLC when, in September of 2016, she accepted Universal LLC's offer of employment. (*Id*. at 65.)

Under the case law outlined above, Allie is not correct. When United was merged out of existence (and absorbed into Universal LLC) in January 2016, Allie became an employee of Universal LLC,[4] which acquired all of the assets of United's parent (including United). Although

---

[4] *See* Allie Decl. Ex. C (W-2 for 2016 identifying "Universal Protection Service LLC" as Allie's employer); *compare id.* Ex B (W-2s for 2012–2015 identifying "United Security LLC" as her employer for those years).

Allie was not formally offered employment with Universal LLC (d/b/a AlliedUniversal) until the September 12, 2016 letter, that letter (which she signed on September 19, 2016) explicitly provides, in relevant part, as follows: "Unless otherwise addressed in this letter, your current employment terms and conditions will remain in place until you are otherwise informed of changes. …" (Allie Decl. Ex. B at 77.) Among the terms and conditions of her employment with United (d/b/a Universal Protection Service) was the Agreement that she signed previously as part of her employment with her "legacy organization, Universal[.]" (*Id*. at 76.)

> The Agreement, in turn, contains two provisions that are relevant:
>
> I further expressly acknowledge and agree that, to the fullest extent allowed by law, any controversy, claim or dispute between me and the Company (and/or any of its affiliates, owners, shareholders, directors, members, officers, employees, volunteers or agents) relating to or arising out of my employment or the cessation of that employment will be submitted to final and binding arbitration before a neutral arbitrator in the county in which I work(ed) for determination in accordance with the American Arbitration Association's National Rules for the Resolution of Employment Disputes as the exclusive remedy for such controversy, claim or dispute.
>
> * * *
>
> This bilateral arbitration agreement covers any and all claims or causes concerning or related to [plaintiff's] employment with the Company and termination of such employment, including but not limited to, any claims arising under … the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et. seq.* … any state or local statutes and ordinances related to wage and hour or wage payment matters … claims for discrimination, harassment, retaliation or whistleblowing of any kind … [and] claims for unpaid wages, medical expenses, or other benefits or compensation[.] …

(Agreement at 46.)[5] Under these terms, the claims asserted by Allie in this lawsuit are all subject to arbitration.

---

[5] The "Company" was identified in the Agreement as "Universal Protection Service," which, as of August 31, 2012, was owned by Universal LLC. Therefore, even if Allie were correct that she was not employed by Universal LLC until September of 2016, that fact does not render the Agreement expired or void in any way since it provided that all employment disputes with the employer "and/or any of its … owners …," must be arbitrated. (Agreement at 46.)

## II. CONCLUSION

For the reasons set forth herein, defendant's motion (Doc. No. 6) to compel arbitration and to dismiss the complaint is granted.

**IT IS SO ORDERED**.

Dated: September 4, 2020

                                                  **HONORABLE SARA LIOI**
                                                  **UNITED STATES DISTRICT JUDGE**